**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

CIELO JEAN 'CJ' GIBSON, EVA PEPAJ, GEMMA LEE FARRELL, JAMILLETTE GAXIOLA, as assignees of CRAZY HORSE SALOON AND RESTAURANT, INC.,

*Plaintiffs*,

v.

CLEAR BLUE SPECIALTY INSURANCE COMPANY,

*Defendant*.

Civil Action No.:

**COMPLAINT**
(Jury Trial Demanded)

Plaintiffs CIELO JEAN 'CJ' GIBSON, EVA PEPAJ, GEMMA LEE FARRELL, and JAMILLETTE GAXIOLA, as assignees of CRAZY HORSE SALOON AND RESTAURANT, INC. (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendant CLEAR BLUE SPECIALTY INSURANCE COMPANY ("Clear Blue"), respectfully allege as follows:

## INTRODUCTION

1. This is an action to collect on a judgment issued in favor of Plaintiffs and against an entity insured by Clear Blue.

2. Plaintiffs are four (4) well-known professional models who in 2021 filed a lawsuit in this Court, *Gibson, et al. v. Crazy Horse Saloon and Restaurant, Inc d/b/a Thee Dollhouse Gentlemen's Club*, Case No. 4:21-cv-03525-JD (the "Gibson Action"), alleging that the underlying defendant, Crazy Horse Saloon and Restaurant, Inc. d/b/a Thee Dollhouse Gentlemen's Club (the "Crazy Horse"), had used Plaintiffs' images in commercial advertising for their strip club, Thee Dollhouse Gentlemen's Club (the "Club"), and did so without consent or remuneration.

3. As discovery showed in the Gibson Action, during the period Crazy Horse published images of Plaintiffs it was insured by Clear Blue.

4. Upon receiving the lawsuit, Crazy Horse tendered the defense of the Gibson Action to Clear Blue and sought indemnity from it.

5. Clear Blue denied Crazy Horse's request for a defense and indemnification.

6. Following significant litigation, a judgment was entered in the Gibson Action in favor of Gibson Plaintiffs and against Crazy Horse in the amount of One Hundred and Ninety-Five Thousand Dollars ($195,000) (the "Gibson Judgment"). *See* Exhibit A.

7. In connection with the Gibson Judgment, the Crazy Horse assigned all claims it had against Clear Blue to the Plaintiffs.

8. Plaintiffs now bring this direct-action seeking to collect the full amount of the Gibson Judgment from Clear Blue and related and accruing costs, fees, and pre- and post-judgment interest.

**JURISDICTION & VENUE**

9. This action seeks relief by reason of Clear Blue's failure and refusal to defend and indemnify its policy holders, Crazy Horse.

10. This Court possesses specific personal jurisdiction over Clear Blue because the insurance policy with Crazy Horse was entered into in South Carolina and the transactions complained of herein between Crazy Horse and Clear Blue took place in South Carolina.

11. This Court has subject matter jurisdiction in this action through diversity of the parties under 28 U.S.C. § 1332. The sum in controversy exceeds $75,000, exclusive of interest and costs.

12. The assignment of claims to Plaintiff was made for valuable consideration, at arm's

length, and as part of a bona fide settlement of the underlying litigation. The assignment was not made for the purpose of manufacturing or creating federal diversity jurisdiction, and no party to the assignment colluded or acted improperly to invoke the jurisdiction of this Court.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within this judicial district.

**PARTIES**

14. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States (though none reside in South Carolina) and whose images were used in South Carolina by Crazy Horse.

15. These images were published by Crazy Horse on its website and/or social media pages which were published in, *inter alia*, South Carolina and/or available to South Carolina consumers.

16. Plaintiff Cielo Jean 'CJ' Gibson ("Gibson") is a well-known professional model, actress, recording artist, and businesswoman, and a citizen of Los Angeles, California.

17. Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a citizen of Los Angeles County, California.

18. Plaintiff Gemma Lee Farrell ("Farrell") is a well-known professional model, and a citizen of Los Angeles County, California.

19. Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a citizen of Clark County, Nevada.

20. Upon information and belief, Clear Blue is a corporation incorporated under the laws of the State of Texas, with its principal place of business in Charlotte, North Carolina, is authorized to do business in South Carolina, and is doing business in South Carolina.

## FACTUAL ALLEGATIONS

21. Beginning on or around May 24, 2019, Crazy Horse secured and maintained a commercial general liability policy from Clear Blue, identified as Policy No. AE04-00000979-00 (the "Clear Blue Policy"). The Clear Blue Policy was in effect from June 5, 2019 to June 5, 2020.

22. The Clear Blue policy was administered, adjusted, and/or handled by Fortis Risk Solutions on behalf of Clear Blue.

23. The policy premium on the Clear Blue policy was a substantial sum of money, which was paid by Crazy Horse.

24. Crazy Horse has met every condition required in the Clear Blue policy.

25. As a result, the Clear Blue policy remained in full force and effect with respect to Crazy Horse during periods of time relevant to the Gibson Action.

26. The Clear Blue policy includes coverage for "Personal and Advertising Injury" among its terms.

27. Pursuant to the terms of the Clear Blue policy, the definition of "Personal and Advertising Injury" includes, in part, injury arising out of "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;"

28. Pursuant to the terms of the Clear Blue policy, the definition of "Personal and Advertising Injury" includes "Oral or written publication, in any manner, of material that violates a person's right of privacy."

29. Although the Clear Blue Policy contains exclusions and endorsements relating to 'Personal and Advertising Injury,' such exclusions do not eliminate Clear Blue's duty to defend the Gibson Action.

30. In or around 2021, the Plaintiffs initiated the Gibson Action against Crazy Horse.

31. Following the Plaintiffs filing of the complaint, Crazy Horse tendered the complaint to Clear Blue.

32. Clear Blue was provided with timely notice of the Gibson Action.

33. Clear Blue denied defense and coverage to Crazy Horse.

34. Clear Blue's denial was arbitrary and contrary to the facts of complaint in the Gibson Action and well-settled law.

35. Clear Blue's denial of a defense to Crazy Horse is without merit.

36. Plaintiffs specifically asserted a demand for monetary damages as a direct consequence of Crazy Horse's advertising activities that fall within covered offenses listed in each of the Insurers' policies.

37. The allegations in the Gibson Action trigger coverage within the provisions of the Clear Blue policy.

38. The Plaintiffs' allegations in the Gibson Action relate directly to the alleged disparagement of, and violation of the right of privacy of, the Plaintiffs.

39. Such allegations and others by the Plaintiffs in the Gibson Action trigger Clear Blue's duty to defend and duty to indemnify Crazy Horse.

40. Specifically, Plaintiffs in the Gibson Action alleged that Crazy Horse advertised, and distributed the images and likenesses of the Plaintiffs on Thee Dollhouse's website, Facebook, Twitter, and Instagram accounts without their knowledge, consent, or authorization, and for Crazy Horse's commercial benefit. *See* Exhibit B, Gibson Action Complaint ¶¶ 24, 27, 30, 33, 36–39, 69–74. Such allegations constitute claims for "publication of material that violates a person's right of privacy" and "publication of material that slanders or libels a person" within the meaning of

Clear Blue's "Personal and Advertising injury" coverage.

41. Considering Clear Blue's refusal to defend the Gibson Action, Crazy Horse entered into a settlement agreement with Plaintiffs pursuant to which it assigned all rights it had in the Clear Blue policy to the Plaintiffs.

42. The settlement was negotiated in good faith and at arm's length. Clear Blue had refused to provide a defense to Crazy Horse leaving it without counsel provided by its insurer.

43. In connection with that settlement agreement, Crazy Horse consented to a judgment being entered against them in the amount of $195,000.

44. This amount was based on what a jury might reasonably award the Plaintiffs, including the amount of attorneys' fees and costs a Court may reasonably award the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment, 28 U.S.C. §2201)**

45. Plaintiffs repeat and incorporate by reference all allegations heretofore set forth herein.

46. An actual controversy arose between Crazy Horse and Clear Blue concerning whether Clear Blue was obligated to defend and indemnify Crazy Horse in the Gibson Action.

47. Clear Blue denied that obligation.

48. As assignees of Crazy Horse's rights under the Clear Blue Policy, Plaintiffs now stand in the place of Crazy Horse, and an actual controversy exists between Plaintiffs and Clear Blue concerning Clear Blue's obligations to defend and to indemnify under the Clear Blue Policy and its liability for having wrongfully refused to defend the Crazy Horse in the Gibson Action.

49. By virtue of the foregoing, Plaintiffs seek a judicial determination concerning this issue. A judicial determination is necessary and appropriate at this time so that the parties may proceed in accordance with their respective obligations and rights as determined by the Court.

50. Plaintiffs respectfully request a declaration that: (a) the allegations in the Gibson Action triggered Clear Blue's duty to defend the Crazy Horse under the Clear Blue Policy; (b) Clear Blue breached its duty to defend by wrongfully refusing to provide a defense to the Crazy Horse in the Gibson Action; (c) as a result of that breach, Clear Blue is obligated to indemnify the Crazy Horse and Plaintiffs as assignees for the full amount of the $195,000 Gibson judgment; and (d) Clear Blue's obligation to indemnify is not defeated or limited by any exclusion, endorsement, or policy limit that Clear Blue might seek to invoke, including but not limited to the Exhibitions and Related Marketing exclusion, given Clear Blue's prior breach of its duty to defend.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**

51. Plaintiffs repeat and incorporate by reference all allegations heretofore set forth herein.

52. Pursuant to the terms of Clear Blue policy, Clear Blue was obligated to defend and indemnify the Crazy Horse in the Gibson Action.

53. One or more claims asserted in the Gibson Action constitute “Advertising Injury” under the definition of “Personal and Advertising Injury” contained in the Clear Blue Policy.

54. Crazy Horse made a proper demand for coverage, defense, and compensation to Clear Blue.

55. Crazy Horse submitted timely notice to Clear Blue.

56. Crazy Horse met every condition of the Clear Blue Policy.

57. Clear Blue improperly refused to cover, defend, and compensate Crazy Horse in connection with the Gibson Action.

58. As set forth above, Clear Blue breached the terms of the Clear Blue Policy with Crazy Horse.

59. The assignment of Crazy Horse's rights under the Clear Blue Policy to the Plaintiffs is valid and enforceable under South Carolina law. South Carolina permits the assignment of post-loss insurance rights without insurer consent. As assignees of Crazy Horse's rights under the Clear Blue Policy, Plaintiffs have standing to assert all claims that Crazy Horse could have asserted against Clear Blue, including claims for breach of the duty to defend, breach of the duty to indemnify, and bad faith refusal to provide coverage.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendant:

A. For the entire amount of the judgment in the Gibson Action, plus pre- and post-judgment interest;

B. Declaring that: (a) the allegations in the Gibson Action triggered Clear Blue's duty to defend the Crazy Horse under the Clear Blue Policy; (b) Clear Blue breached that duty by wrongfully refusing to provide a defense; (c) Clear Blue is obligated to indemnify the Crazy Horse and Plaintiffs as assignees for the full amount of the $195,000 Gibson judgment; and (d) Clear Blue's obligation to indemnify is not defeated or limited by any exclusion, endorsement, or policy limit that Clear Blue might seek to invoke, given Clear Blue's prior breach of its duty to defend;

C. For attorney's fees and costs pursuant to S.C. Code Ann. § 38-59-40 and any other applicable basis;

D. For pre-judgment interest on all awards of damages from the date of Clear Blue's wrongful denial of coverage;

E. For post-judgment interest at the applicable statutory rate from the date of judgment

until paid in full;

F. For such other and further relief as this Court deems just and proper.

Dated: November 12, 2026
Mount Pleasant, SC

s/ Joshua E. Slavin
Joshua E. Slavin
The Law Offices of Joshua E. Slavin
PO Box 762
Mount Pleasant, SC 29465
P: 843-619-7338
F: 888-246-8914
josh@attorneycarolina.com
Fed. Bar No. 12602

John V. Golaszewski*
New York Bar No. 4121091
*Pro Hac Vice Application Forthcoming*
**THE CASAS LAW FIRM, P.C.**
**Talent Rights Law ®**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
P: 855-267-4457
F: 855-220-9626
john@casaslawfirm.com

Attorneys for Plaintiffs